UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shafak Pervez, | No. 2:18-cv-02793-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| Xavier Becerra, in his official capacity; Brent E. Orick, in his official capacity; California Department of Justice; County of Sacramento, | |
| Defendants. | |

     Plaintiff Shafak Pervez alleges a past defective psychiatric certification wrongly deprived her of her Fourteenth Amendment right to due process and her Second Amendment right to bear arms. *See generally* First Am. Compl., ECF No. 5. She seeks a writ of mandate and injunctive relief. *Id.* ¶¶ 75–79. Pervez and Sacramento County, the only remaining defendant, filed cross-motions for summary judgment. On December 11, 2020, the court heard the motions, with counsel Kellan Patterson appearing for Ms. Pervez, and Shanan Hewitt appearing for the County. ECF No. 55. Because Ms. Pervez has not pointed to evidence that could support her claims as presented in her complaint at trial, the court **grants** the County's motion and **denies** Ms. Pervez's motion.

/////

## I. SEALING

The court must consider Ms. Pervez's private medical records to resolve the parties' cross-motions. Each party has moved to seal the medical record excerpts each submits in support of the cross-motions. *See* County Req. to Seal, ECF No. 43; County Req. to Seal 2.0, ECF No. 47; Pervez Req. to Seal, ECF No. 48. Because the parties' cross-motions are case-dispositive, the court has considered whether "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives that would adequately protect the compelling interest." *Oregonian Publ'g Co. v. U.S. Dist. Ct. for the Dist. of Ore.*, 920 F.2d 1462 (9th Cir. 1990)) (citing *Press-Enterprise Co. v. Sup. Ct. of Cal. for Riverside Cty.*, 478 U.S. 1, at 13–14 (1986)). The subjects of medical records have a strong interest in confidentiality, which, in this case, outweighs the public's interest in their disclosure. *See Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1180, 1186 (9th Cir. 2006); *see also United States v. Dadi*, No. 18-0283, 2020 WL 5982007, at *1 (W.D. Wash. Oct. 8, 2020). Without an order to seal, plaintiff's compelling interests here would be harmed. There are no alternatives that would adequately protect these compelling interests. The court **grants** the requests to file under seal. *See*, Order to Seal, ECF No. 53.

## II. REVIEW OF RELEVANT STATUTORY SCHEME

California's Lanterman-Petris-Short Act establishes a statutory scheme for the involuntary civil commitment of persons with certain mental health conditions.[1] *See* Cal. Welf. & Inst. Code § 5001. The act permits a person to be placed on an involuntary seventy-two-hour hold in a psychiatric facility when that person is determined to be a danger to herself or others or is gravely disabled because of a mental health disorder. *Id.* § 5150. A person who is detained initially for seventy-two hours may be detained for up to fourteen additional days if the treating facility certifies the person "is, as a result of a mental health disorder . . . , a danger to others, or to himself or herself, or gravely disabled." *Id.* § 5250(a). If the treating facility makes this

---

[1] The Ninth Circuit has explained the general statutory scheme in some detail. *See Doe v. Gallinot*, 657 F.2d 1017, 1019 n.3 (9th Cir. 1981).

certification and decides to hold the committed person longer than seventy-two hours, the facility must notify the committed person of her right to an attorney and to participate in a probable cause hearing before a commissioner, referee or hearing officer. *Id.* §§ 5250, 5252, 5253, 5254. Under section 5250, the facility can hold someone for no longer than 14 days.

California law bars a person who has been certified under section 5250 from owning or possessing a firearm for five years after his or her release from a mental health facility. *Id.* § 8103(g)(1).[2] Since at least the year 2000, California law has required that section 5250 certifications be reported to the U.S. Department of Justice. *See id.* § 8103(g)(2)(A). Federal law contains a prohibition on firearms possession for those with prior mental health certifications, effectively permanently, subject to certain narrow exceptions not at issue here. *See* 18 U.S.C. § 922(g)(4).

### III.   FACTUAL BACKGROUND

The facts provided here are undisputed except as otherwise noted.

Ms. Pervez has been diagnosed with major depressive disorder and borderline personality disorder, and she has long experienced depressive episodes and suicidal ideation. Pervez Dep. at 22, 24, 49, 52–54, County MSJ Ex. B, ECF No. 44-3.[3] Slightly more than twenty years ago, she overdosed on Doxepin, a drug prescribed to treat her depression. *Id.* at 22, 25, 44–45. After the overdose she was first treated at Kaiser Permanente but was later transferred to the Sutter Center for Psychiatry, where she stayed for nearly two months. *Id.* at 21, 24, 47–48. At the Sutter Center she received therapy, pharmaceutical treatments, and electroconvulsive therapy treatments

/////

---

[2] The court has reviewed the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, ___ S. Ct. ___, 2022 WL 2251305 (U.S. June 23, 2022). The court finds the decision does not affect the application of California law here, given that "[n]othing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill. . ." *Id.* at *39 (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008) and *McDonald v. Chicago*, 561 U.S. 786 (2010)).

[3] When citing to the record the court utilizes the page numbers assigned by the briefing party, rather than those generated by the court's CM/ECF filing system.

1  for her psychiatric symptoms, which, she admits, have caused some memory problems. *Id*. at 29–
2  30; Pl.'s Resps. to Request for Admission No. 13 ("Pl.'s Admissions"), County MSJ Ex. E, ECF
3  No. 44-3.
4      After Ms. Pervez was discharged from the Sutter Center, she remained suicidal. Pl.'s
5  Admissions No. 1. As a follow-up to her previous treatment, she saw a licensed social worker at
6  Kaiser Permanente. Blake Dep. at 9, 17, County MSJ Ex. C, ECF No. 44-3. The social worker
7  determined Ms. Pervez was a danger to herself. Blake Dep. at 21. The social worker sent
8  Ms. Pervez to the Sacramento County Mental Health Treatment Center ("treatment center") on an
9  involuntary seventy-two-hour psychiatric hold, based on section 5150. *Id*. at 20; Pl.'s
10 Admissions Nos. 18 & 23. At the end of the seventy-two-hour hold, Ms. Pervez was admitted to
11 the treatment center's inpatient unit. Blake Dep. at 17, 20; Luo Decl. ¶¶ 1, 4, County MSJ Ex. F,
12 ECF No. 44-3.
13     Ms. Pervez does not remember being notified of any section 5250 certification, receiving
14 notice of a probable cause hearing, or attending a probable cause hearing after certification.
15 Pervez Dep. at 77–78, Pl.'s MSJ Ex. A, ECF No. 46-3. The County claims she did receive notice
16 and did receive a hearing. It cannot point to documents in support of its position; it says the state
17 Superior Court at some point "purged" Ms. Pervez's official court file once that court "no longer
18 handled 5250 hearing officer assignments," despite California's law requiring the Superior Court
19 to preserve records of section 5250 certifications for at least twenty years. Penderson Dep. at 39,
20 County MSJ Ex. I, ECF No. 44-3; Cal. Gov't Code § 68152(a)(12)(B). If the Superior Court had
21 preserved records for the required period of time, it would have had them in 2019, at the time
22 plaintiff's counsel appears to have requested any records related to Ms. Pervez's case. *See* Pl.'s
23 MSJ, Ex. E (Superior Court's letter dated June 27, 2019, responding to plaintiff's counsel's
24 request for clarification dated June 19, 2019). Under these circumstances, although plaintiff
25 relies on the absence of the Superior Court documents in pursuing one of her claims, as discussed
26 below, she does not argue spoliation supports a negative inference that the contents of the
27 documents themselves would undermine the County's position. Def.'s Response to Pl.'s Separate
28 /////

Statement of Undisputed Material Fact No. 61, County Opp'n, ECF No. 49-1; Penderson Dep. at 39.

In the absence of primary documents, the County relies on one summary court record and County employees' testimony about the procedures they say were generally followed at the relevant time. The employees' testimony is undisputed. In 2020, the County's standard procedures when addressing a person presenting with plaintiff's symptoms involved three steps: First, the certifying physician notified the patient both of the section 5250 certification and its ramifications. Luo Decl. ¶¶ 2, 5. Second, the Licensed Social Worker in charge of notifying patients and arranging the required hearing, who in this case would have been David Boggs, would inform the patient of the certification hearing and reiterate the legal ramifications of certification. Boggs Dep. at 12–13, 17–18, County MSJ Ex. G, ECF No. 44-3; *cf.* Cal. Welf. and Inst. Code § 5254. Third, a patient would then meet with a patient's rights advocate or attorney, who would represent the patient at hearing. Boggs Dep. at 17, 20–22; Konstad Decl. ¶ 4, County MSJ Ex. H, ECF No. 44-3; Cal. Welf. & Inst. Code § 5256.7.

The County would hold the hearing within four days of initial certification. Konstad Decl. ¶ 3; Cal. Welf. & Inst. Code § 5254. A certification officer, generally an attorney, would preside over the hearing; the treatment center was represented by Mr. Boggs and the patient was represented by the patient's rights advocate or attorney. Boggs Dep. at 18–19. A patient could waive the right to appear personally, but the attendance of the patient's rights advocate or attorney was mandatory. *Id*. at 55–56; Cal. Welf. & Inst. Code § 5256.3. Certification required a finding of probable cause, as it still does. Konstad Decl. ¶ 3; Cal. Welf. & Inst. Code § 5256.6. If the hearing officer found probable cause, the patient could be held involuntarily for up to 14 days, subject to earlier release at the treating physician's discretion. Cal. Welf. & Inst. Code §§ 5250, 5257. A patient could challenge a finding of probable cause in a habeas corpus proceeding before a judge and would be represented in that proceeding by a public defender. *Id*. § 5275.

In this case, although the primary records no longer exist, summary digital records maintained by the Sacramento County Superior Court suggest a certification hearing was held in Ms. Pervez's case and the hearing officer found probable cause for an involuntary hold longer

than seventy-two hours. Penderson Dep. at 25–30 & Dep. Ex. 3.[4] The digital record is not a scan of primary documents; rather, court staff created it by manually entering information based on a review of original paperwork. Penderson Dep. at 33, 36. Ms. Pervez disputes that any clear inference can be drawn from the digital record, citing to a County official's explanation that while presumably the original paper records related to a probable cause hearing, "without the official court file" she "can't say with certainty that the entry is accurate" because "[t]here's always room for error in the data-entry component." Pervez Opp'n at 7–8, ECF No. 50 (quoting Penderson Dep. at 40). While noting this uncertainty, Superior Court staff commonly relies on these summary digital files. *Id.*

There is no record of any habeas proceeding with respect to Ms. Pervez's involuntary section 5250 hold.

As provided by state law, the County reported Ms. Pervez's certification to the California Department of Justice within 24 hours of the certification determination, and the California Department of Justice later reported the same to the U.S. Department of Justice. Cal. Dep't of Justice Disclosures, County MSJ Ex. M, ECF No. 44-3. In 2010, the treatment center purged its copy of Ms. Pervez's medical records under its then-existing document retention policies. *See, e.g.,* Gamez Dep. at 55, 61, County MSJ Ex. J, ECF No. 44-3; *see also id.* Ex. 1 at 3.

Quite a few years later, in or about June 2017, Ms. Pervez attempted to buy a gun in Nevada as a gift for her husband, who is a gun enthusiast. Pervez Dep. at 74–75; First Am. Compl. ¶ 24. Rather than obtaining the gun as she expected, she received a letter informing her that federal law barred the purchase because of her prior section 5250 certification. First Am. Compl. ¶¶ 26–27. Pervez then filed this action against the California Attorney General and the Assistant Bureau Chief of the California Department of Justice's Division of Law Enforcement, both in their official capacities; she also named the U.S. Department of Justice and Sacramento County. Compl., ECF No. 1. Her First Amended Complaint, which she has verified, asserts two federal constitutional claims based on 42 U.S.C. § 1983, one claiming a violation of her Second

---

[4] The deposition exhibit cited here is filed under seal as provided above. The deposition transcript cited is attached to counsel's declaration. *See* ECF No. 44-3.

Amendment rights and the other of her Fourteenth Amendment due process rights. *See* First Am. Compl. In her prayer for relief, she seeks injunctive relief in the form of a writ of mandate ordering defendants to erase or remove records indicating she was adjudicated as mentally defective or had been committed to a mental institution; and an injunction prohibiting defendants from maintaining, reporting or sharing any record showing she was adjudicated as mentally defective, committed to a mental institution, or subject to a section 5250 hold. *Id*. at 13. Additionally, she requests damages and an order mandating the creation of new policies and procedures for better maintenance of records and prompt responses to requests for information relating to records of a firearm prohibition. *See id.* at 1, 13.

The court previously dismissed Ms. Pervez's claims against all defendants except the County. ECF Nos. 27 & 30. The County's motion for summary judgment, Mot. Summ. J. (MSJ), ECF No. 44, and Ms. Pervez's cross-motion, Pervez MSJ, ECF No. 46, are fully briefed and before the court. *See* ECF Nos. 49, 50, 51, 52. Each party moves for full summary judgment in its favor.

**IV.   LEGAL STANDARD**

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

When, as here, the "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and alterations omitted). In its following discussion, the court considers the merits of each motion together, given their overlap.

## V.    DISCUSSION

### A.    Clarification of *Monell* Claims

As noted above, Ms. Pervez advances her claims under 42 U.S.C. § 1983. Because the County of Sacramento is the sole remaining defendant, for Ms. Pervez's claims to survive summary judgment, she must satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Under *Monell*, counties and municipalities are not automatically responsible for the constitutional torts of their employees under a "*de facto respondeat superior*" theory of liability. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). Some direct official act by the municipality must be the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694. To establish a municipality's liability under § 1983, a plaintiff must therefore show (1) she was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was a moving force behind the constitutional violation. *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

1   This "policy or custom" requirement applies in § 1983 cases irrespective of whether the relief
2   sought is monetary or, as here, prospective. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 39
3   (2010).
4         At hearing, counsel clarified that in advancing her *Monell* claims, Ms. Pervez effectively
5   contests three policies or customs; the first two apparently are the subject of both her Second
6   Amendment and her Fourteenth Amendment Due Process claim, and the third of her Due Process
7   claim alone. First, Ms. Pervez claims the County failed to notify her about, or even hold, a
8   certification hearing as required by California law, which deprived her of her Due Process and
9   therefore her Second Amendment rights. Pervez Opp'n at 1. Her briefs describe this theory as
10  asserting a custom both in terms of affirmative policymaking and inadequate training. *Compare,*
11  *e.g., id.* ("[D]efendant's failure to train employees resulted in the failure to adequately notify
12  plaintiff of her right to a certification review hearing") *with, e.g.*, Pervez MSJ at 7–8 ("[U]nder
13  *Monell*, a plaintiff may establish liability by demonstrating that . . . the constitutional tort was the
14  result of a longstanding practice or custom which constitutes the standard operating procedure of
15  the local government entity . . . . There is no evidence that she had received notice of a 5250
16  certification hearing[, and] a hearing never occurred."). Second, she claims the destruction of her
17  records, both by the Superior Court and the treatment center, deprived her of any chance to clear
18  her name through later judicial review, violating her substantive due process rights and as a result
19  her Second Amendment rights. *See* Pervez MSJ at 10 (Plaintiff framed this claim as alleging a
20  "per se substantive due process violation."); Pervez Opp'n at 1, 13–15 (same). Third, she argues
21  the County's policy of allowing patients to waive their right to appear at their certification
22  hearings, without prior advice from legal counsel, is a facial violation of procedural due process
23  because it deprived her of a right to representation by counsel and subjects her to the stigma of a
24  mental health certification without adequate process of law. Pervez MSJ at 12; Pervez Opp'n at
25  15–16.
26        The County argues at the outset that the operative complaint does not include any claims
27  based on the first and third custom and policy, respectively, that plaintiff now asserts. County
28  Opp'n at 12–13. Whether "to permit such a belated attempt to expand a complaint lies within the

discretion of the district court." *Brass v. County of Los Angeles*, 328 F.3d 1192, 1197 (9th Cir. 2003) (citation omitted). The court exercises its discretion to consider plaintiff's claims as she now presents them; there is no prejudice to defendant as a result.

### B. Due Process Claims

To the extent Ms. Pervez claims a deprivation of procedural due process, "a 42 U.S. Code § 1983 claim alleging a procedural due process denial requires proof of three elements: (1) a deprivation of a constitutionally protected liberty interest; (2) a state action; and (3) constitutionally inadequate process." *Fugazi v. Padilla*, No. 2:20-970, 2020 WL 2615742, at *7 (E.D. Cal. May 22, 2020) (citing *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005)). Her substantive due process claim invokes the component of due process that "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).

In evaluating plaintiff's procedural and substantive due process claims on summary judgment, the court considers each of the three *Monell* theories on which plaintiff relies for these claims: specifically, the County's (1) custom or practice of failing to notify of a section 5250 hearing or to conduct a hearing, whether as a result of failure to train or of affirmative policy decisions; (2) policy supporting wrongful destruction of records; and (3) policy or practice of permitting patients to waive personal attendance at a certification hearing.

#### 1. Failure to Notify and Conduct a Hearing

Here, Ms. Pervez has not pointed to any evidence from which a factfinder could conclude the County acted with deliberate indifference to a constitutional right, as required by *Monell*'s third prong. The court addresses both theories on which she relies for this claim, most directly an affirmative unconstitutional policy and also poor training. A plaintiff can succeed on a claim based on an affirmative policy decision by showing a municipality had a "longstanding practice or custom" or "standard operating procedure." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147

(9th Cir. 2005) (quoting *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002)). A de facto policy can similarly be inferred from "repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (citation omitted).

"To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (internal quotation omitted). The failure must reflect a "deliberate or conscious choice by a municipality" because "adequately trained [employees] occasionally make mistakes." *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 61–62. That said, a single incident may suffice under "a narrow range of circumstances, [where] a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63. "[F]inding a single instance sufficient for a failure-to-train claim [is] only appropriate where the 'unconstitutional consequences' were 'highly predictable' and 'patently obvious.'" *Nelson v. Cty. of Sacramento*, 926 F. Supp. 2d 1159, 1169–70 (E.D. Cal. 2013) (quoting *Connick*, 563 U.S. at 64).

Here, regarding an unconstitutional policy, Ms. Pervez does not present evidence of a pattern of violations similar to the constitutional deprivation she asserts she experienced. Nor does she offer evidence of a policy not to provide notice or conduct hearings. Therefore, she can survive summary judgment only if the alleged violation she experienced was of the rare type that, standing alone, can support a policy-based claim. But, as she does not show that subsequent "'unconstitutional consequences' were 'highly predictable' and 'patently obvious'" a single instance is insufficient to show a policy. *See Nelson*, 926 F. Supp. 2d at 1170.

Turning to the failure to train assertion, as noted above, Ms. Pervez does not dispute that Mr. Boggs and Dr. Liu had a practice of informing patients in compliance with section 5250 notice requirements. *See* Pl.s' Resp. to Cty.'s Statement of Undisputed Facts Nos. 18–20, ECF

No. 50-1; *Gallinot*, 657 F.2d at 1023–24 (finding current § 5250 certification process satisfies procedural due process concerns). Her claim that the County provided deficient training therefore cannot be based on the training provided these employees.

As for the claims based on the actions of treatment center floor staff more generally, Ms. Pervez argues without evidence that the County's "training policy was deliberate [sic] indifferent to the constitutional rights of plaintiff and other similarly situated individual [sic] confined at [the treatment center]." Pervez Opp'n at 13. She reasons that the County "wholly failed to train floor staff on how to respond to patient's questions or concerns about 5250 certifications when it was known that floor staff frequently advised patients regarding issues concerning their 5250 certification[s]." *Id*. Although people with mental health conditions may often be unable to understand the consequences of a certification, no evidence here shows that floor staff were so poorly trained that failures to give notice were "predictable" or "obvious." *Connick*, 563 U.S. at 64. Nothing in the record addresses, for example, what staff members knew about which patients and when, and what additional training they should have received to meet any constitutional minima. The record here thus is not analogous to the hypothetical unconstitutional failure to train scenario described in *Connick* and *City of Canton*: "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* at 63 (citing *City of Canton*, 489 U.S. at 390 n.10).

Plaintiff's claim of failure to notify and conduct a hearing cannot survive summary judgment. In this respect her motion is denied, and the County's motion is granted.

### 2. Destruction of Records

Ms. Pervez next argues the destruction of County records deprived her of any chance of judicial review after the fact, and thus deprived her of substantive due process and subjected her impermissibly to stigma.

As noted above, substantive due process "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotations omitted). "To

establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez*, 147 F.3d at 871.

Ms. Pervez appears to assert she was deprived of two rights as a result of the destruction of documents. First, she argues she was deprived of her right to review and rely on records of her certification in later judicial proceedings. *See* Pervez Opp'n at 14 ("Plaintiff has a liberty interest in ensuring her records are retained because the records serve as the factual basis to uphold or disprove a finding which has caused a lifelong prohibition of her constitutional rights."). At hearing and in her filings, Ms. Pervez has identified two sets of documents that were destroyed: certification records maintained by the Superior Court and the treatment center's medical records. *See* Pervez MSJ at 8, 10. But she challenges only the destruction of the treatment center records based on a policy or custom for *Monell* purposes. *See id.* at 10; *see also* Pervez Opp'n at 13. Thus, the court focuses only on that office's alleged policy of destroying medical records after at least ten years' storage, which is three years longer than the seven years required by state law. Cal. Code Regs. tit. 22, § 71551(c) ("Patient records including X-ray film or reproductions thereof shall be preserved safely for a minimum of seven years following discharge of the patient").[5] Ms. Pervez does not point to any authority for her possession of a fundamental right in the preservation of mental health records for more than the ten years. *See* Pervez MSJ at 11. Nor does she identify the source of a fundamental right in the ability to challenge her certification more than ten years after the fact. Nothing in the record before the court supports the conclusion a treatment center's decision to destroy sensitive mental health records after retaining them for a decade "shocks the conscience." There is no basis from which a factfinder could conclude Ms. Pervez should prevail on her substantive due process claim.

---

[5] While state law does require the Superior Court to keep Lanterman-Petris-Short Act records for 20 years, Cal. Gov't Code § 68152(a)(12)(B), Ms. Pervez does not point to anything in the record indicating the court had a separate policy, for example, regarding the maintenance of all paper records for 20 years rather than maintaining digital records of key information. Even if she were formally challenging the Superior Court's actions, she has not demonstrated that court's destruction of her records was anything more than an isolated incident. She has not provided a basis for *Monell* liability so as to survive summary judgment.

Ms. Pervez also argues she was saddled with significant stigma by her section 5250 certification, in violation of due process. Pervez Opp'n at 14 ("In the present case, the liberty interest at stake is . . . the negative impact of being classified a[s] mentally defective."). "Stigma plus" is a recognized procedural due process right. *Paul v. Davis*, 424 U.S. 693, 712–14 (1976) (declining to consider a stigma claim under substantive due process after recognizing its existence under procedural due process). Although a stigma may have a "drastic effect," that effect, "apart from some more tangible interests such as employment," is not "liberty or property by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701. There are two ways to satisfy the stigma-plus test. "First, the plaintiff must show that the injury to [her] reputation was inflicted *in connection with* the deprivation of a federally protected right." *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006) (emphasis in original). "Second, the plaintiff must show that the injury to reputation *caused* the denial of a federally protected right. . . ." *Id.* (emphasis in original). To survive summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252, but Ms. Pervez has presented nothing more than bare assertions that she has suffered by "enduring the negative impact." Pervez Opp'n at 14. Thus, Ms. Pervez's stigma-plus claim fails for purposes of summary judgment.

### 3. Waiver of Patient's Attendance at Certification Hearing

Ms. Pervez also argues the County has an unconstitutional policy of allowing persons subject to certification to waive the right to appear at their probable cause hearings without first consulting with an attorney. Pervez MSJ at 12; Pervez Opp'n at 15–16. While the policy Ms. Pervez challenges here is a provision of state law, *see* Cal. Welf. & Inst. Code § 5256.3, municipalities are not shielded from *Monell* liability just because their policy or custom is dictated by state law, *Evers v. Custer County*, 745 F.2d 1196, 1203–04 (9th Cir. 1984) (following state laws requires conscious decision, which is a policy decision for purposes of *Monell*).

/////

/////

/////

Here, specifically, the County's policy follows California's Welfare and Institutions Code section 5254.1, which provides:

> The person delivering the copy of the notice of certification to the person certified shall, at the time of delivery, inform the person certified of his or her legal right to a judicial review by habeas corpus, and shall explain that term to the person certified, and inform the person of his or her right to counsel, including court-appointed counsel pursuant to Section 5276.

*See* Def. Resp. to Pl. Separate Statement of Undisputed Material Facts. ¶¶ 4–5, ECF No. 51-1. Section 5276 in turn provides that "[t]he person certified shall be present at the certification review hearing unless he or she, with the assistance of his or her attorney or [patient's rights] advocate, waives his or her right to be present at a hearing." Cal. Welf. & Inst. Code § 5256.3. Section 5255 also requires that a person meet with the patient advocate or attorney "as soon after the certification as practicable," and that the advocate will help "in preparing for the certification review hearing or to answer questions or otherwise assist the person as is appropriate." *Id.* § 5255. The meeting with the advocate is to occur before any waiver of the right to appear. *See id.* § 5256.3.

Ms. Pervez does not assert the County breached any of these requirements. *See* Pervez MSJ at 12. Rather, given that Ms. Pervez argues "[i]t is ill-advised to allow a non-attorney to advise and represent a patient who faces the loss of the liberty of movement and forfeiture of constitutional rights," Pervez Opp'n at 16, the court construes Ms. Pervez's claim to be that allowing patients to consult with an advocate rather than an attorney prior to waiver violates the procedural Due Process Clause. According to Pervez, given that many "patients were either highly agitated or confused when being advised of their rights and procedures related to the certification hearing" there is a "heighten[ed] [ ] necessity of providing counsel who is obligated to competently advocate in the best interest of the [patient]." *Id.* The Fifth and Sixth Amendments do not create an unwaivable right to consultation with an attorney. Rather, the Constitution demands a state provide the option of being represented by counsel, which the County indisputably provided. *See* County Opp'n at 14–15; *see also Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) ("[T]he Sixth Amendment right to counsel may be waived. . . .");

*Miranda v. Arizona*, 384 U.S. 436 (1966). But the Fifth and Sixth Amendments require any waiver be made "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 835 (1975) ("[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." (citation omitted)).

Although people with serious mental health conditions may in some circumstances be unable to knowingly and intelligently forgo their constitutional rights, Ms. Pervez has not pointed to evidence that could show she was incapable of waiving her rights to counsel knowingly and intelligently at the relevant time here. Pervez Dep. at 23–24, 28–29. Thus she has not cited evidence that could show the State's policy, as enforced here by the County, forces people to waive their rights unintelligently or unknowingly in practical effect. She has done little more than simply assert a violation.

Nor can Ms. Pervez succeed by drawing an analogy to *Specht v. Patterson*, 386 U.S. 605 (1967). *See* Pervez Opp'n at 15. She argues the protections guaranteed to her at the certification hearing were equivalent to the protections the Supreme Court found to be insufficient in *Specht*. In *Specht*, the Court examined the commitment proceedings provided by the Colorado Sex Offenders Act. 386 U.S. at 607. As "the invocation of the Sex Offenders Act mean[t] the making of a new charge leading to criminal punishment," *id.* at 610, the Court held that the Due Process Clause required that hearings occur and that a defendant have the opportunity to participate in them with counsel, if he or she choose. *See* 386 U.S. at 610–11. This case is distinguishable from *Specht* in two ways. First, the statutory regime here does permit certified persons to speak to an attorney and to be represented by an attorney at the certification hearing, if they choose. Second, the certification in *Specht* was for a term of "one day to life," whereas the section 5250 certification here lasts 14 days at most. *Id.* Both are significant deprivations of liberty, but a 14-day temporary hold is not analogous to the looming danger of life-long commitment.

Ms. Pervez cannot support a procedural Due Process claim based on the process of patients' waiving their attendance at a certification hearing. Accordingly, she has provided no basis for her Due Process claim to survive summary judgment.

### C. Second Amendment Claim

The court turns to Ms. Pervez's Second Amendment claim. As noted, her *Monell* claims are that the County's custom or practice of failing to notify and hold certification hearings as California law requires deprived her of her procedural Due Process and therefore her Second Amendment rights. She argues the County's practice stems from a failure to train. She also claims the treatment center's policy and practice of destroying records has deprive her of any chance to clear her name through later judicial review, violating her substantive Due Process rights and as a result her Second Amendment rights.

These theories of liability are the same as the theories plaintiff uses to support her due process claims. And as reviewed above there is no evidence of a policy of failing to notify and hold certification hearings. Nothing in the record demonstrates that, even if Ms. Pervez was denied proper notice of a hearing, the denial was anything more than an isolated incident, which alone cannot support a *Monell* claim. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Regarding the destruction of records, as noted above, the County treatment center does have an express policy that documents are purged after ten years, thus supporting a theory of *Monell* liability. *See* Gamez Dep. at 11, 55.

Although Ms. Pervez's theories of the County's liability bear an indirect relationship to her Second Amendment rights—but for her certification, she could possess a firearm—the theories do not support a viable Second Amendment claim. She does not claim that her section 5250 certification itself deprives her of her Second Amendment rights, and neither California law nor County policy imposes an indefinite ban on firearm ownership following certification. *See* Cal. Inst. & Welf. Code § 8103(g)(1) (prohibiting those certified under § 5250 from owning firearm for five years). Her arguments about reporting requirements are likewise challenges to California law, not County policies. Fundamentally, it is instead a federal statute, 18 U.S.C. § 922(g), which is enforced by federal agencies, that bars her from buying and possessing a gun. She does not claim § 922(g) is unconstitutional on its face or that any federal agency has enforced it against her unconstitutionally. Nor is any federal or state officer a defendant in this litigation. *See* Order, ECF No. 27.

1    The County's motion is granted to the extent Ms. Pervez relies on the Second
2 Amendment, and her motion is denied to the same extent.

3 **VI.   CONCLUSION**

4    Plaintiff has not identified evidence that could support a successful *Monell* claim at trial,
5 with respect to any of the constitutional claims she advances.  The County's motion for summary
6 judgment is thus **granted**.  Plaintiff's motion is denied.

7    The motions to seal are **granted** to protect Ms. Pervez's interest in the privacy of her
8 personal medical records.

9    This order resolves ECF Nos. 44, 46, 48.

10   IT IS SO ORDERED.

11  DATED:  June 27, 2022.

12

_____
CHIEF UNITED STATES DISTRICT JUDGE